312-0800, Jason and Lucia Kalkman, affidavits by Mark Johnson v. George and Maureen Nedved, accounts by Jeffrey Allen Reba. Mr. Reba? Good morning. It pleases the Court, although there's not the greatest amount of money involved in the case, this is a really important case because while there's tens of thousands of homes that get sold in Illinois every year where people have to fill out the statutory form that the legislature has commanded, we don't yet have a case from any reviewing court that says specifically whether we are to broadly construe that form or strictly construe it. And that's the first issue that I want to speak to today, and then from there we kind of get into the more specifics of the statute. By way of background, real quickly, the part of the case that's left that went to judgment for the plaintiffs had to do with whether a garage door, a detached garage, some patio doors, and windows, not floor-to-ceiling or wall-to-wall windows, just regular old windows as the record would show, I guess smaller than these majestic ones here, but kind of the same concept, constitute walls under the form. The plaintiff's case was limited completely to their view that our clients had falsely stated that there were no material defects in floors or walls. That's number six on the form. And as the court's aware from our brief, we're not here to challenge the evidence. We're here just to deal with the legal question. It's a de novo review because that's a statutory form. It's a case of statutory construction. From a practical standpoint, just as to kind of get ourselves thinking along the lines of common sense, because common sense is what is supposed to be the test. If the statute doesn't specifically define a term and there's nothing that defines wall in the act, you have to look at what the common sense or dictionary definition, as legions of cases say, that's what we should do. Now, of course, interestingly, right behind your honors, we have a wall and we have a window. We have a door that the court walked through. I submit as you walked through, even with your robes on, you did not think you were walking through a wall. You think you were walking through a doorway. When I look out at the tree, I don't have Superman vision. I'm not looking through a wall. I'm looking through a window at that tree. The initial problem, in our view, with the trial judge, and again, he's writing or thinking on a clean slate because there really was no Illinois opinion on point. And frankly, we couldn't find any opinion from any jurisdiction, and most states have these statutory forms that have been enacted over the last decade or so. So we don't necessarily fault his desire to do what he thought may have been the right thing to do. As I said, he threw out half their case after their case and then gave them judgment for these parts. But he even, in his own ruling, acknowledged that this act is designed to eliminate the common law rule. We've all heard caveat emptor from the first part of real property class, the idea basically being that unless there's fraud, it's buyer beware, and there's really no duty on the seller's part to disclose anything. Legislature said, we're not going with that anymore. We want to protect homebuyers, so they created a statute and a statutory form to list the defects that they would want disclosed by a seller to a prospective buyer. Now, where we think the judge went awry, however, in his analysis, was he concedes in his ruling that the act is designed to eliminate the caveat emptor rule, but then he goes forward and still says that he sees the act as requiring broad requirements and should be broadly construed. But the cases go back to old England. When you have a statute that is modifying or eliminating a common law rule, you are to view that statute, which is a derogation of common law, strictly. So we think that's the first point the court needs to hone in on, and that is we think that the trial judge erred in giving this act a broad construction. And unfortunately, from there, everything seems to us to flow in a manner that, I guess the result may have been preordained. So if you go back to the beginning and say that there should have been strict construction, now we take a look at the form. The form has 23 separate questions on it. It has, and this case has to do with water coming under the garage door, water and moisture rotting out windows, water coming through a patio door. If you look at questions 2 through 5 on the form, that's where we have, you know, is there a leaky basement, is there cracks in the foundation, is there problems with the ceilings and the chimney where there's water incursion. That's where the water matters are talked about. They never say anything in the form at that point or in that general area of the form about doors and windows. In addition, we have, again, there's no 24th question. There's nothing that says, well, and any other material defect that should be disclosed or any other material defect that if you were buying this house, you'd want to know about. Legislation never said that. And I point out in our brief in what was a non-exhaustive search, we found at least, I think, six or seven states that have right in their form that catch-all, as I would refer to it, that catch-all part that after they list all the defects, then they also say, well, we forgot one. Anything else that's material to the transaction, you better fill out. The Illinois legislature obviously could have done that. Other legislators in other states knew how to do that. In addition, in other states we've cited, they specifically created forms that have boxes for doors and windows, maybe right next to where walls or floors appear. In addition, if you look at the form, it does not say that this is an all-encompassing form. There's language that says the seller is disclosing certain conditions, and they're providing the following information. And in our view, you have to look at the whole statute. The courts cannot add to the statute. The courts cannot simply say without some evidence that the legislature goofed that the legislature goofed. I mean, there's been nothing that's been cited in any of the briefs that say, well, here's the legislative history, and it looks like they wanted to do something more than they did, but they just didn't get around to it. They forgot to put the 24th question in. So we believe that the court erred in broadly construing the form and ignoring or maybe not comprehending or grasping how the legislature itself in its language limited the form to only certain conditions.  And we've cited the dictionary definition, and if you look in our brief, it seems to us that a wall is something of a more permanent, solid structure. We refer to the one dictionary definition that it's a continuous surface, except we're pierced by doors and windows. Obviously, Webster and his cohorts think that there is a distinction between a wall and something that may be subsumed inside of it to allow air or people to come or light to come through. So our point on the issue of what a wall is, again, common sense, dictionary definition, and I know in the other side's brief they say, well, it really isn't just a wall. It's something that has the same purpose as a wall or maybe all part of a wall. That would all be a great argument if the legislature had said in its form something like a wall or something having the same purpose of a wall. They didn't say that. They said floors and walls. And while I don't think we have any real duty to explain what the legislature may or may not have been thinking, I do point out that when you think about a wall or a floor, it's way more permanent than doors and windows. It's structural. It's supportive. And any defect that would be in a floor or a wall is going to be less observable to a plaintiff coming through a home inspection or their paid home inspector, and likely the defect in a floor or a wall could be more material and more costly to remedy than something that many people, you go by their house, there's the window guy sign out front. They've changed their windows and changed their walls in their house, but that's, I think, sometimes just natural aesthetics and what people will do. Do you mean their doors rather than their walls? I mean doors, right. See, I'm confused now. What I meant was doors and windows are something you'll see get removed or replaced before you're going to tear out walls and floors in a house. So that's my initial remarks. If anyone has any questions, I'd be happy to answer them. The statute is remedial in many ways, right? It's remedial. And I mentioned this here. I think it's a really crucial distinction that consumer fraud, that's remedial also. And consumer fraud, the legislature specifically said in that statute, because that, I think, is, again, a derogation of common law because it's a statutory, more easily proved fraud remedy. And in that situation, they said liberal construction. In our act here, they don't say that. And, Your Honor, you actually wrote the opinion I cited in that Martis case where the Consumer Fraud Act, there's one of the statutes of the Consumer Fraud Act that lists about 25 different statutes that could kick you into having a consumer fraud remedy. There was a case where somebody came in and said, Well, the one I have is kind of like that. And you said, No, it's not listed. You said that even in a statute that was to be liberally construed, you said that the rule that if you include that many categories and you exclude something, the legislature is presumed to have intended the distinction. Does the statute actually say, I'm not finding it here, that it's not in lieu of an inspection? Is that language in the statute? Right. There is a reference to that, but I think there's cases, and we're not really even making the argument, we did in court, of course, in the trial trying to say that this form is to be kind of taken with a grain of salt. If you get your own inspector who doesn't find these things, which is what we said had happened, apparently the trial judge didn't necessarily give that any credence. But we're here really today to focus on the statute, and irrespective of what happened in the inspection or that this remedy is in, I guess, in lieu of an inspection, you have the right certainly to have an inspection. Just because you are handed the form doesn't mean you give up your right as a buyer to an inspection. I'm not sure, was that your question? Not exactly, but it's okay. Okay. Anything else? Thank you. Thank you. Mr. Johnson? Good morning, and may it please the Court. Mark Johnson on behalf of the plaintiffs. Your Honor, this is a case of first impression in Illinois. I've looked throughout the state, couldn't find anything similar to it. I looked in other jurisdictions, couldn't find anything similar to it. And I think principally that's because this is a common sense kind of question. When you go to interpret whether or not a wall would consist of doors and windows, you have to consider the function of a window and a door. Obviously, as counsel mentioned, a door you can ingress and egress through, a window you can open up, you get sunlight that comes through. But a door and a window also serves a very practical function, and that is intended to keep the elements out of your house. Rainwater, snow, animals. It is supposed to be secure. When that window is closed, when that door is closed, it is intended to prevent water from coming into your house. The same function that a wall has. So I think when you look at it from that standpoint, I think the trial judge had it exactly right. They serve different functions, but the basic function of a door and a window, when they're closed, is to keep it weathertight. And that's one of the evils that the legislature intended to address when it passed this act. I've handled quite a few Disclosure Act cases, and almost every single one I have handled have to do with water damage, moisture damage, whether it's through a ceiling, whether it's through a basement. I've actually had cases where it involves walls. I mean, I'm sorry, windows and doors. So I kind of look at this and ask yourself, was the answer that the Netflix gave to question six, was it really truthful, was it accurate, was it complete? The trial judge found they knew that their windows had water problems. They knew that the sliding glass door leaked so bad that there was a hole the size of your fist on the floor right there. The garage door, they knew that that leaked. That leaked every time it rains, and to this day it still does. Every time it rains, it is wet from that garage door all the way back to the back of the garage. There's standing water in the garage every time it rains. Is that really a truthful answer? Did the legislature really intend to exclude garage doors? Think about a garage door. Its purpose is to allow your car to get, you know, park the car in the garage, and it basically is a wall that opens and closes. When you close that, you expect it to be dry inside your garage. If it leaks, that garage door isn't performing the function it's intended to, or at least not one of the functions it's intended to. These are all latent defects. With respect to the inspection, it really is irrelevant what the inspection shows or doesn't show. The seller of the property has a duty to disclose defects that they're aware of, and the trial judge found that, in fact, the medevacs were aware of all of these defects, and they didn't disclose them. Is it relevant with regard to the inspection that the legislature put it in there at all? Well, you're entitled to have the inspection, but you're also entitled to rely on the answers that the seller gives to you. Is it possible that that's indicative of the fact that they did not intend for this list of 23 questions to be exhaustive, for you to rely on that in total for the evaluation of the house? No, because there's a lot of things in the inspection that would reveal that aren't in the form at all, like furnaces, different things throughout the house that aren't on the form and were never intended to be on the form, mechanical things. That's my point, that there are things that would be disclosed in an inspection that the legislature did not include in this list of 23 questions, that they did not intend for it necessarily to be exhaustive of all material defects. Well, I understand your question. I would say that the fact that they included walls in there, to me, when you close your window, it's as much a part of your wall as any other portion of it. To the extent that water comes through that window, you now have water coming through that part of your wall. It just happens to be made of glass. Let me give you an analogy. What would you do with a house, and there are quite a few of these, because this case will impact every residential sale in the state of Illinois. There are houses that are made up of nothing, but one wall could be nothing but glass. Would that not be intended to be included as part of a wall simply because the material happens to be glass? What would we do in that instance if that entire wall of glass leaked? It would be a wall of glass, and it would be covered under the statute. You could say that part of that was a window. For instance, let's take the patio doors in this particular case. These patio doors made up almost the entire section of that wall, but it was the main way to get onto the patio that overlooked the lake. Those patio doors, that was the wall right there. They leaked. When they were closed, they were intended to keep the moisture out. They didn't do that. They failed in their function of keeping the moisture out. I think that undermines the entire intent of the legislature to address latent defects like that. Some of these defects, especially water-related defects, aren't things that you can easily discover. I think when you look at interpreting the act, you have to look at the statute in its entirety. Looking at the language of it, looking at the word wall, what subject does it address? What was the intent of the legislature in enacting that and putting the wall in there? Did they intend to exclude windows? Did they intend to exclude garage doors? Did they intend to exclude patios? These are all places in everybody's home that when you close your doors and your windows, you intend it to be waterproof. To the extent that it's not waterproof, that section of your wall that happens to be made up of a door, happens to be made up of a window, is defective. I also will point out, it was brought up in the brief, and I don't know if Attorney Riva mentioned it. The overall cost to my clients repairing these particular damages was roughly $25,000, or roughly 10% of the value of this house. This is significant damage that these folks incurred. So the idea that replacing a window or replacing a door is a less expensive endeavor, I don't think is really true. This is a very expensive problem for my clients, one that they're still dealing with today. I have a question based on Items 5 and 6. When you compare Item 5, it seems that the legislature recognized there's a difference between a material defect in a roof, ceiling, or chimney because they added in 5 leaks or material defects. And 6, it's material defects in the walls or floors and does not include the language with reference to leaks. Is there a possibility that a leaky window is still a window that does not have a material defect in its structure? Your Honor, I hate to ask this, but I have hearing aids in both ears. I'm sorry. It's my fault. With reference to 5 and 6 of the disclosure form, it appears to me that ceilings and chimneys, a seller has to disclose a material defect in a ceiling or chimney. In addition to disclosing a material defect, they also have to disclose whether there's a leak. When you compare it to the next number, which is 6, talking about walls and windows, they have to disclose material defects, but there's no reference to leaks. Do you think that distinction is important when we strictly construe this? No, Your Honor, I don't. And the reason for that is real simple. Determining a material defect can be applied to any number of things, and I think that when you have water coming into your home, water is one of the most damaging things that... But it doesn't appear that leaking windows or leaking doors is something that is encompassed by this form. If the door opens and closes and the window opens and closes and doesn't have a material defect in that function, I'm wondering if the seller, strictly construing this, actually has to disclose it. But I think you've answered my question. In your construction, there is no distinction. No, I don't think so, Your Honor. Thank you. Thank you. Real quick, I'll just touch on the points that were made. I think I already alluded to it, the argument about the same function and the same effect. That's not what the legislative distinction is. Point two, I don't know how in the world, under any circumstances, a garage door on a detached garage can be considered a wall. That just seems to make no common sense whatsoever. I think another part of the problem that's running through this is we have this form that sellers who are selling a house fill out these forms. And I would assume even if they went to a lawyer, a lawyer would tell them to fill out the form, and that's what they would say. I don't know how regular people are to look at a form and decide, well, it says walls or floors, but we're supposed to decide that our garage door qualifies as a wall or a floor. Justice McDade, I think maybe I now understand your question from when I was up here before about the point that there's a disclosure duty on the part of the seller, but there's an inspection right on the part of the buyer. And in my view, I don't think that that adds, I think actually your point that you're considering, I think, actually helps us because I don't think the fact that they've given the right to now also have an inspection and temper the duty with that right, that means that we are creating a broader form where we are creating a 24th question to the form. I think I already mentioned the all-glass wall. I think that's been discussed. These are not all-glass windows or all-glass walls. They're not walls of windows by any means. And even on the patio doors, and the pictures are in the record, it's just a regular patio door that may take up more wall space than a regular door might going out to a patio, but it's certainly by no means the equivalent of an entire wall of glass windows as part of a patio door, if that makes sense. And my last point, unless the Court has questions, on this issue about the leaks and the fifth question right before the sixth question, I think that actually is important, because if we are strictly construing the statute, again, statutory construction principles that I've already mentioned, I think another one is you have to look at the whole form, you have to look at every word. You cannot assume that a word that's in there is surplus that can be cast aside. So in our view, we believe that if you give every word its popular common-sense definition, that it looks to us like if the legislature wanted to speak more broadly than just the word defects, they know, again, how to do it. They didn't do that in the sixth question, either in terms of leaks or in terms of something having the same function or purpose or effect or makeup or content of a wall. So for those reasons, we'd ask that the judgment be reversed outright for us. But then I think I did mention in our brief that since attorney's fees were awarded, that if you do reverse or even partially reverse that, since the trial judge said you only get fees for the part of the case you won, we'd have to have a supplementary fee hearing in the circuit court to hash that out. Unless the court has any questions at this time, I thank your honors for your attention to both of us this morning. Thank you very much. Thank you. We will be taking the matter under advice and rendering a decision, hopefully without any due delay. And now we'll stand in a brief recess for a panel change.